UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIO ALEXIS and DOUGENIE ALEXIS,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>PMM ENTERPRISES LLC, d/b/a EMPIRE AUTO GROUP LLC<br><br>　　Defendants. | No. 3:17-cv-1622 (MPS) |

**RULING AND ORDER ON MOTION FOR DEFAULT JUDGMENT**

Plaintiffs Mario Alexis and Dougenie Alexis ("the Alexises") bring this action against PMM Enterprises, LLC, doing business as Empire Auto Group ("Empire").[1] They allege that Empire violated state and federal consumer protection laws when it misrepresented the condition of a vehicle that it sold them and violated federal lending laws in providing financing for their purchase. The Alexises served PMM with the complaint on October 2, 2017. (ECF No. 9.) Empire filed an answer on October 24 through an individual who did not purport to be an attorney (ECF No. 10), and the Alexises moved for an entry of default on November 11 on the basis that a corporate defendant may not appear pro se in federal court (ECF No. 11). Empire did not file a response. On December 21, I ordered Empire to find counsel who could enter an appearance on its behalf, noting that if no attorney appeared within 21 days, I would direct the clerk to enter default. (ECF No. 14); *see Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("The rule that a corporation may litigate only through a duly licensed attorney is venerable and widespread."). No attorney filed a notice of appearance within that time, and on

---

[1] The plaintiffs also sued Sensible Auto Lending LLC, but voluntarily dismissed the claims against that entity after moving for default judgment against Empire. (ECF No. 12.)

1

January 19, 2018, I directed the clerk to enter default. (ECF Nos. 15 & 16.) The Alexises have now moved for default judgment in the amount of $30,886.84. (ECF No. 18.) For the reasons set forth below, the motion is GRANTED in part, DENIED in part, and DENIED WITHOUT PREJUDICE in part.

I.     BACKGROUND[2]

On October 8, 2016, Mario Alexis approached a salesman at Empire Auto about purchasing a 2013 Lincoln MKZ. (ECF No. 1 ¶ 10.) The salesman told him that the price of the car was $16,900.00, and reported that it was "clean and had never been in an accident." (*Id.* ¶¶ 11-12.) Alexis agreed to purchase the car. He paid a down payment of $2,000.00 to Empire, and financed the balance of $17,688.29 through a retail installment contract. (*Id.* ¶¶ 13-14.) Contrary to the salesman's representation, the contract listed the vehicle's purchase price as $18,000.00.[3] When Alexis asked about the discrepancy, he was told that the additional $1,100.00 was a "bank fee." (*Id.* ¶¶ 15-16.) The Alexises assert that the bank fee was included in order to compensate Empire Auto for arranging the sale with the lender. (*Id.*) The Alexises were not given a copy of the purchase order or retail installment contract when they signed the paperwork purchasing the car. (*Id.* ¶ 18.)

---

[2] Once default has been entered against a defendant, "all well-pleaded allegations in the complaint pertaining to liability are deemed true." *Scottsdale Ins. Co. v. LCB Const. LLC*, No. 11-CV-3316 ARR JMA, 2012 WL 1038829, at *3 (E.D.N.Y. Feb. 14, 2012), report and recommendation adopted, No. 11-CV-3316 ARR JMA, 2012 WL 1041455 (E.D.N.Y. Mar. 28, 2012). "A fact is not 'well-pleaded' if it is inconsistent with other allegations of the complaint or with facts of which the court can take judicial notice." *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000). Because I conclude that all of the plaintiff's asserted facts are well-pleaded, I draw upon the plaintiff's complaint in setting out the background to this case.

[3] The Alexises attach a copy of the retail installment contract to their motion for default judgment. (ECF No. 18-3.) It contains an itemization of the amount financed, including a total purchase price of $19,149.29. (*Id.* at 3.) It indicates that this amount includes $1,149.20 in sales tax. (*Id.*) Thus, the price of the car listed in the contract (pre-tax) is $18,000.00.

In July 2017, Mario Alexis brought the vehicle to another dealership to have it appraised in the hopes of trading it in but was told that the vehicle had "prior damage." (*Id.* ¶ 19.) He brought the vehicle to an independent expert, who informed him that it had significant structural damage and had not been properly repaired. (*Id.* ¶ 20-21.) The expert concluded that the vehicle "was not in merchantable condition and was unsafe to drive." (*Id.*) He told Alexis that any automotive professional could have seen evidence that the vehicle had been "wrecked and improperly repaired" by "performing a simple visual inspection." (*Id.* ¶ 21.) The Alexises allege that Empire knew or should have known about the structural damage because it had a duty under state law to perform a safety inspection. (*Id.* ¶ 22.) The Alexises returned the vehicle to Empire on August 27, 2017 (*Id.* ¶ 23), and informed Empire that they revoked their acceptance of the vehicle the following day. (*Id.* ¶ 24.)

## II. LEGAL STANDARD

Although "a default constitutes an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action." *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d at 420. It therefore "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." *Leider v. Ralfe*, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F.Supp.2d 418, 420 (S.D.N.Y.2000)); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) ("A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment. Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken

as true."). The court must "draw all reasonable inferences in [the non-defaulting party's] favor." *Finkel v. Romanowicz*, 557 F.3d 79, 84 (2d Cir. 2009).

Once a court determines that a plaintiff is entitled to default judgment as a matter of law, it must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnaise Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Id.* "A district court has the discretion to determine the amount of damages to be included in a default judgment by an evidentiary hearing, detailed affidavits, or documentary evidence." *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 191 (2d Cir. 2006). It is not necessary to hold a hearing on damages as long a court "ensure[s] that there [is] a basis for the damages specified." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

### III. DISCUSSION

The Alexises seek compensatory damages, punitive damages, and attorneys' fees based on five causes of action. They assert that **(A)** Empire violated the Truth in Lending Act by failing to provide copies of the sale and loan documents and by misrepresenting the price of the vehicle; **(B)** Empire violated the Electronic Funds Transfer Act by conditioning the loan on the Alexises' paying via preauthorized transfers; **(C)** Empire breached the implied warrant of merchantability because the vehicle was structurally unsound and unsafe to drive; **(D)** Empire breached an express warranty because a salesman incorrectly told Mario Alexis that the vehicle had never been in an accident; and **(E)** Empire's conduct was unfair and deceptive in violation of the Connecticut Unfair Trade Practices Act. I consider each of the Alexises' causes of action in turn.

#### A. Truth in Lending Act

The Truth in Lending Act (TILA) aims to promote "the informed use of credit" and to "protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The Act requires creditors to make certain disclosures before extending a loan, and delegates authority to the Consumer Financial Protection Bureau (CFPB) to define the scope and form of the required disclosures. 15 U.S.C. § 1604(a). By CFPB regulation, creditors must make disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17. Disclosures must include "the amount financed," which is calculated by subtracting "any prepaid finance charge" from the "principal loan amount or the cash price" plus "any other amounts that are financed by the creditor and are not part of the finance charge." 12 C.F.R. § 226.18(b). The "finance charge" is "the cost of consumer credit as a dollar amount." 12 C.F.R. § 226.4. "Cash price" is defined as "the price at which a creditor, in the ordinary course of business, offers to sell for cash property or service that is the subject of the transaction." 12 C.F.R. § 226.2(a)(9).

The facts in the complaint, taken as true, establish that Empire violated the TILA regulations in two ways. First, the Alexises were not given a copy of the contract containing the required disclosures before the consummation of the agreement (ECF No. 1 ¶ 18), in violation of 12 C.F.R. § 226.17. Second, the cash price listed on the contract included a "bank fee" of $1,100.00. (ECF No. 1 ¶¶ 15-17.) The "bank fee" is an additional charge beyond the price at which Empire would have sold the car to a customer for cash. Including the bank fee in the cash price of the vehicle thus allowed Empire to understate the finance charge. *See* 12 C.F.R. § 226.4.

The TILA allows a consumer to recover (1) any actual damage sustained as a result of the violation, 15 U.S.C. § 1640(a)(1); (2) twice the amount of any finance charge up to a maximum of $2,000.00, 15 U.S.C. § 1640(a)(2)(A)(i)-(ii); *see also Koons Buick Pontiac GMC, Inc. v. Nigh*,

543 U.S. 50, 62 (2004) (holding that the statutory cap in § 1640(2)(A)(ii) applies to car loans under § 1640(2)(A)(i))[4]; and (3) reasonable attorneys' fees, 15 U.S.C. § 1640(3). Here, the Alexises established that Empire violated the TILA regulations and understated the finance charge by at least $1,100.00, entitling the Alexises to the maximum statutory damages of $2,000.00 and reasonable attorneys' fees. There are no facts in the complaint or the record, however, to suggest that the Alexises suffered actual damages as a result of the TILA violation. In particular, the complaint states that Mario Alexis asked about the additional $1,100.00 charge *before* agreeing to the purchase. (ECF No. 1 ¶ 16.) He chose to go forward with the purchase even after Empire raised the price of the vehicle and explained that the extra charge was a "bank fee." The Alexises are entitled to $2,000.00 in statutory damages plus attorneys' fees as a result of Empire's TILA violation, but they have failed to allege a basis for awarding actual damages.

### B. Electronic Funds Transfer Act

The Electronic Fund Transfer Act (EFTA) prohibits creditors from conditioning "the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers." 15 U.S.C. § 1693k. A creditor that does not comply with this requirement is liable to the consumer for their actual damages, statutory damages between $100.00 and $1,000.00, and reasonable attorneys' fees. 15 U.S.C. § 1693m(a). In assessing the appropriate statutory damages, courts must consider "the frequency and persistence of [the creditor's] noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional." 15 U.S.C. § 1693m(b)(1). In this case, the Alexises have established a violation of the EFTA by alleging that "Empire Auto required that Plaintiffs set up

---

[4] Congress raised the statutory damages after the Court's decision in *Koons Buick* but did not otherwise alter the language that the Court analyzed in that case. *See* Pub. L. No. 111-203 § 1100A (2010).

automatic withdrawals of the loan payments as a condition of financing the Vehicle." (ECF No. 1 ¶ 32.) The Alexises do not claim any actual damages as a result of Empire's EFTA violation, but they request the maximum statutory damages of $1,000.00. They have not alleged any facts suggesting that Empire's noncompliance was persistent or intentional, nor have they provided any detail as to the nature of the noncompliance. I find that the Alexises are entitled to minimum statutory damages of $100.00 plus reasonable attorneys' fees.

### C. Breach of Warranty

#### i. Implied Warrant of Merchantability

Under Connecticut Law, "a warranty that . . . goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Conn. Gen. Stat. 42a-2-314 § 1. Goods are "merchantable" if they are "fit for the ordinary purposes for which such goods are used." *Id.* § 2(c). Empire is a "merchant" because it ordinarily deals in goods—i.e., cars—of the kind at issue here. (ECF No. 1 ¶ 4); *see also* Conn. Gen. Stat. Ann. § 42a-2-104 (defining merchant). A car's ordinary purpose is "normal and reliable driving." *Tirado v. Ofstein*, No. HHDCV054014648S, 2008 WL 902506, at *5 (Conn. Super. Ct. Mar. 14, 2008). The complaint alleges that

> [an] independent expert determined that the Vehicle had been involved in a prior event that caused structural damage to the rear and left side of the Vehicle, and the Vehicle was improperly repaired and was not in merchantable condition and was unsafe to drive. He further opined that any automotive professional performing a simple visual inspection could clearly see that the Vehicle had been wrecked and poorly repaired.

(ECF No. 1 ¶ 21.) The complaint also alleges that the car was in this condition at the time of sale (*id.* ¶ 38), and that Empire knew or should have known about the condition (*id.* ¶ 45(e)). The Alexises thus establish that Empire breached the implied warrant of merchantability.

#### ii. Express Warranty

7

The Alexises also contend that Empire breached an express warranty. A seller creates an express warranty through "any affirmation of fact or promise" or "description of the goods" that becomes part of the basis of the bargain. Conn. Gen. Stat. § 42a-2-313(1)(a)-(b). Here, a salesman at Empire told Mario Alexis that the car was "was clean and had never been in an accident." (ECF No. 1 ¶ 10.) Alexis relied on the salesman's statement when he decided to buy the car. (*Id.* ¶ 12.) Contrary to the salesman's representation, an expert later determined that the car had been in a "prior event" that caused significant structural damage. (*Id.* ¶ 21.) Taking these allegations as true, Empire violated its express warranty that the car was accident-free.

### iii. Remedies for Breach of Warranty

Given that the Alexises have established breaches of the implied warrant of merchantability and an express warranty, I must next determine the remedies available to them under Connecticut law. Connecticut's commercial code allows a buyer to revoke his or her acceptance of goods if "acceptance was reasonably induced either by the difficulty of discovery [of nonconformance] before acceptance or by the seller's assurances." Conn. Gen. Stat. § 42a-2-608(1)(b). Upon justifiable revocation, a buyer is entitled to the same remedies as if the goods were rejected initially. Conn. Gen. Stat. § 42a-2-608(3). This includes recovery of the amount paid for the goods, Conn. Gen. Stat § 42a-2-711(1), as well as incidental damages, Conn. Gen. Stat. § 42a-2-715(1).

The Alexises revoked their acceptance of the car on August 28, 2017, after they learned that they had been misled in making the purchase and that the car was unsafe to drive. The complaint alleges that the Alexises paid a down payment of $2,000.00 (*id.* ¶ 14), made payments under the loan contract of $7,243.42 (*id.* ¶ 47), and paid $650.00 to have the car inspected, (*id.* ¶ 41). Mario Alexis filed an affidavit in support of the motion for default judgment confirming the

8

amount of the down payment (ECF No. 18-2 ¶ 7), but his affidavit does not address either the cost of the inspection or the total payments that were made on the loan. The retail installment contract, attached as an exhibit to the Alexises' motion, indicates that they were obligated to make a weekly payment of $121.94. (ECF No. 18-3 at 2.) Even assuming they made every payment from the time they entered the contract until they revoked their acceptance of the vehicle, the total due was only $5,487.30.[5] Further, neither the complaint nor the affidavits in support of default judgment state that the Alexises made all payments in accordance with the contract. Although I must draw all reasonable inferences in favor of the moving party, *Finkel*, 557 F.3d at 84, "the quantum of damages remains to be established unless the amount of damages is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 704 (2d Cir.1974). Here, the actual damages alleged in the complaint exceed the damages supported in the affidavits and documents. The Alexises do not provide a basis from which I could reasonably infer that they made weekly payments under the contract. I find that the Alexises are entitled to actual damages of $2,000.00 for their down payment, but they have not shown that they are entitled to damages based on their loan payments or inspection fees. Within seven days of this ruling, the Alexises may file a renewed motion for damages, providing affidavits or other documentation to show the total amounts that they paid under the retail installment contract and their costs for having the car inspected.

The Alexises also assert that they are entitled to reasonable attorneys' costs and fees based on the warranty breaches, either under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2310(d), or as common-law punitive damages. "Under Connecticut law, punitive

---

[5] The contract indicates that payments were due "WEEKLY BEGINNING 10/21/2016." The Alexises revoked their acceptance of the car on August 28, 2017, 44 weeks and 3 days later. Assuming that payment was due on the same day each week, they would have been responsible for 45 payments in total.

9

damages are available for a claim of breach of warranty if plaintiff alleges conduct that is 'done with a bad motive or with a reckless indifference to the interests of others.'" *Makuch v. Stephen Pontiac-Cadillac, Inc.*, No. 3:12-CV-866 WWE, 2013 WL 45887, at *2 (D. Conn. Jan. 3, 2013) (quoting *L.F. Pace & Sons, Inc. v. Travelers Indem. Co.*, 9 Conn. App. 30, 48 (1986)). "Common law punitive damages cannot exceed the plaintiff's expenses of litigation, less his taxable costs." *Berry v. Loiseau*, 223 Conn. 786, 832 (1992). The federal MMWA does not create a separate cause of action, but allows a plaintiff who is successful on a state-law breach of warranty claim to recover attorneys' fees and costs. 15 U.S.C. § 2310(d)(2). In this case, the allegations are sufficient to conclude that Empire acted in bad faith and with reckless indifference to the Alexises interests. The complaint alleges that Empire knew or should have known that the car was unsafe to drive. Empire nevertheless sold the Alexises the car and misrepresented its condition. As a result, I find that the Alexises are entitled to reasonable attorneys' fees, either as common law punitive damages or under the MMWA.[6]

### D. Connecticut Unfair Trade Practices Act

#### i. Empire's Unfair and Deceptive Practices

Finally, the Alexises seek damages under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq. (ECF No. 1 ¶ 46.) CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." To determine whether a practice is "unfair" under CUTPA, courts consider:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . .

---

[6] I address the appropriate amount of attorneys' fees in detail below.

10

*Ulbrich v. Groth*, 310 Conn. 375, 409 (2013) (alterations omitted). An act or practice is "deceptive" if it involves (1) a misrepresentation or omission that is "likely to mislead consumers," *Montanez v. D & D Auto, LLC*, No. 3:15-CV-397 (VAB), 2016 WL 1254199, at *13 (D. Conn. Mar. 29, 2016) (quotation marks omitted); (2) the consumer "interpret[s] the message reasonably under the circumstances," *id.*; and (3) the misrepresentation or omission was material to the consumer's decision, *id.* "A simple breach of contract does not constitute a violation of CUTPA; the plaintiff must also show substantial aggravating circumstances." *Sterling v. Farran & Ezedine, LLC*, No. 3:10-CV-1119 WWE, 2011 WL 219697, at *5 (D. Conn. Jan. 20, 2011).

The Alexises have established that Empire violated CUTPA in two ways. First, courts in Connecticut have held that negligent misrepresentation is an aggravating factor elevating a breach of contact claim to a violation of CUTPA. *Montanez*, 2016 WL 1254199, at *13 (collecting cases and holding that the plaintiff stated a claim under CUTPA by alleging negligent misrepresentation in connection with a car sale). Taking the facts alleged in the complaint as true, the Alexises established that Empire's salesman knew or should have known that the car was unsafe to drive as a result of an earlier event. (ECF No. 1 ¶ 21.) He nevertheless told Mario Alexis that the car was "clean and had never been in an accident." (*Id.* ¶ 11.) The Alexises relied on his misrepresentation when they decided to purchase the car. (*Id.* ¶ 13.) I find that the salesman's misstatement was one that was likely to mislead consumers, the Alexises interpreted it reasonably, and they based their decision to purchase the car on the misrepresentation. *See Montanez*, 2016 WL 1254199, at *13. Empire's negligent misrepresentation thus raised its breach of its express warranty and the warrant of merchantability to the level of a CUTPA violation.

Second, the Alexises establish that Empire violated CUTPA by violating other state and federal statutes. *See Tilquist v. Ford Motor Credit Co.*, 714 F. Supp. 607, 616 (D. Conn. 1989) ("Thus, a violation of the CUTPA may be established by showing a practice amounting to a breach of public policy. . . . A breach of public policy, in turn, may result from a violation of another statute."). As discussed above, Empire violated the TILA by including a "bank fee" in the purchase price of the car and understating the finance charge. *See* Part III.A., *supra*. Under Connecticut law, the maximum permissible finance charge for a used car more than two years old, expressed as an annual percentage rate (APR), is 19%. Conn. Gen. Stat. § 36a-772.[7] The APR in the Alexises retail installment contract was 19%. (ECF No. 18-3 at 2). If Empire had included the $1,100 bank fee in the finance charge as required by the TILA, the APR for the Alexises contract would have risen above the statutory maximum rate. Empire's misrepresentation of the purchase price of the vehicle not only violated the TILA, then, it also allowed Empire to obscure a violation of Connecticut's Retail Installment Sales Financing Act ("RISFA"). Conn. Gen. Stat. § 36a-772; *see Barco Auto Leasing Corp. v. House*, 202 Conn. 106, 109 (1987) (approving a trial court's finding that a party had violated CUTPA through its violation of the RISFA but remanding on other grounds).

    ii. **Punitive Damages**[8]

Under CUTPA, the Alexises have "access to a remedy far more comprehensive than the simple damages recoverable under common law." *Hinchliffe v. Am. Motors Corp.*, 184 Conn.

---

[7] Connecticut uses the same definitions for key financial terms as those in the TILA. *See* Conn. Gen. Stat. § 36a-676.

[8] A plaintiff who prevails on his or her CUTPA claim may also recover actual damages, Conn. Gen. Stat. § 42-110g(a) and reasonable attorneys' costs and fees, id. § 42-110g(d). The Alexises actual damages under CUTPA are the same as those arising out of Empire's breach of the implied warranty of merchantability and express warranty, and I consider the appropriate attorney's costs and fees in Part III.E. below.

12

607, 617 (1981). Conn. Gen. Stat. § 42-110g(a) gives the Court discretion to award punitive damages.[9] The statute does not dictate a method for calculating punitive damages. Courts thus strive to impose damages sufficient to "create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts," *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 618 (1981), without being so high as to "shock the judicial conscience." *Tingley Sys., Inc. v. Norse Sys.*, Inc., 49 F.3d 93, 96 (2d Cir. 1995). Courts often achieve this goal by tethering punitive damages to the actual damages in a case, imposing a multiplier as necessary to deter future misconduct. *Bridgeport Harbour Place I, LLC v. Ganim*, 131 Conn. App. 99, 145, 30 A.3d 703, 735 (2011) ("Courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages.") (quotation marks and alterations omitted).

Empire's conduct in this case was egregious. It violated state and federal consumer protection laws and misrepresented the cost of financing a vehicle to the Alexises. More troublingly, Empire violated those laws in the course of selling the Alexises a car that it knew or should have known was unsafe to drive. The Alexises request punitive damages equal to their compensatory damages, effectively doubling that award. The compensatory damages here are modest, totaling $2,000.00. I find that punitive damages are appropriate in this case to deter similar misconduct in the future, and that an award equal to the Alexises' compensatory damages is reasonable to achieve that goal. Should the Alexises file a renewed motion for damages as discussed in Part III.C., *supra*, providing a factual basis for increasing their compensatory damages, I will also consider a commensurate increase in the punitive damages award.

### E. Attorneys' Fees

---

[9] Unlike common law punitive damages, CUTPA punitive damages are not limited to attorneys' fees and costs. *See Associated Inv. Co. P'ship v. Williams Assocs. IV*, 230 Conn. 148, 160 (1994).

The Alexises include with their motion for default judgment an affidavit by their attorney, Daniel S. Blinn, describing his and his firm's experience in cases substantially similar to this one. (ECF No. 18-5.) The affidavit attaches time sheets detailing the firm's work on this matter. (ECF No. 18-5.) Mr. Blinn indicates that his hourly rate is $400, and he spent 5.4 hours on this case. (*Id.* at 9.) Two paralegals with hourly rates of $95 and $150 spent 1.6 hours and 4.3 hours on this matter respectively. (*Id.*) Finally, the time sheet indicates that Mr. Blinn's associate attorney, Brendan L. Mahoney, spent 15.0 hours on this matter at an hourly rate of $275. The Alexises do not seek to recoup any costs associated with this litigation. Based on my review of the affidavit and attached time sheets, as well as my "familiarity with fee awards in this District and the rates charged in this District by attorneys with similar experience to Plaintiff's counsel" *Heyward v. PRA Recovery, Inc.*, No. 10 CV 2030 MRK, 2011 WL 3134985, at *4 (D. Conn. May 13, 2011), I find that the plaintiff's requested attorneys' fees are reasonable.

### F. Conclusion

To summarize, I find that the Alexises are entitled to (1) $2,000.00 in statutory damages under the TILA; (2) $100.00 in statutory damages under the EFTA; (3) $2,000.00 in compensatory damages for Empire's violation of the implied warrant of merchantability, violation of its express warranty, and CUTPA violation; and (4) $2,000.00 in punitive damages for Empire's violation of the CUTPA. In total, they are entitled to damages in the amount of $6,100.00. I also find that the Alexises are entitled to $7,000 in attorneys' fees under the TILA, EFTA, CUTPA, and MMWA (or as common law punitive damages for the breach of warranty). Their motion for default judgment is GRANTED with respect to those amounts. To the extent that the motion requests actual damages under the TILA or additional statutory damages under the EFTA, it is DENIED. To the extent that it requests compensatory damages beyond the

14

$2000.00 that they paid as a down payment and corresponding punitive damages, it is DENIED WITHOUT PREJUDICE.

Within seven days of this ruling, the Alexises may file a renewed motion for compensatory and punitive damages. They must include with their motion affidavits or other documentation to provide a factual basis for awarding damages based on their payments under the retail installment contract and their costs for having the car inspected.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
October 29, 2018